IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| KEYANA RENEE FORD, | No. 2:22-CV-0494-DMC |
|---|---|
| Plaintiff, | |
| v. | <u>MEMORANDUM OPINION AND ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

   Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c); <u>see also</u> ECF No. 8 (minute order reassigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 10 and 13.

   The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

|   |   |   |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 28, 2019.  See CAR 16.[1] In the application, Plaintiff claims disability began on October 9, 2019.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on May 20, 2021, before Administrative Law Judge (ALJ) Joyce Frost-Wolf.  In a June 3, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): loss of visual acuity; depressive disorder; and post-traumatic stress disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity:  full range of work at all exertional levels but with the following nonexertional limitations: she should not climb ladders/ropes/scaffolds and should not work around heavy machinery with fast moving parts or at unprotected heights. She can occasionally work in environments with concentrated exposure to fumes, odors, dusts, gases, and other respiratory irritants. Furthermore, the claimant is limited to jobs that can be performed with monocular vision. She can understand and remember simple routine tasks and can maintain attention and concentration for simple, routine tasks with the normal breaks in the workday. She cannot have public contact and cannot perform teamwork-related tasks. Finally, the claimant can adapt to changes consistent with simple, routine tasks;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 16-27.

After the Appeals Council declined review on January 18, 2022, this appeal followed.

/ / /

/ / /

/ / /

---

[1]  Citations are to the Certified Administrative Record (CAR) lodged on July 5, 2022, ECF No. 9.

## III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinions; and (2) the ALJ failed to properly evaluate Plaintiff's subjective statements and testimony.

### A. Evaluation of Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

///

///

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)).  In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies.  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors."  See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state:  "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

6

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ evaluated the medical opinion evidence of record to determine Plaintiff's residual functional capacity. See CAR 24-25. In particular, the ALJ evaluated opinions from the following sources: (1) state agency psychological consultants R. Warren, M.D., and P.G. Hawking. Ph.D.; (2) consultative psychological examiner Charles Odipo, Ed.D.; (3) Plaintiff's treating psychiatrist Frederick Su, M.D.; (4) state agency medical consultants S. Amon, M.D., and A Pan, M.D.; and (5) consultative medical examiner Christine Fernando, M.D. See id. The ALJ found the opinions of Drs. Warren and Hawking to be persuasive. See id. The ALJ determined Dr. Odipo's opinion to be "overall persuasive." Id. Notably, the ALJ determined that Dr. Odipo's assessment of mild to moderate mental limitations were not "work-preclusive." Id. As to Dr. Su, the ALJ found the doctor's opinions "poorly supported and inconsistent with the preponderance of the evidence of record." Id. The ALJ found Dr. Pan's assessment more persuasive that Dr. Amon's. See id. at 24-25. Finally, the ALJ found Dr. Fernando's opinions persuasive. See id. at 25.

Plaintiff contends the ALJ erred with respect to evaluation of opinions offered by Drs. Odipo and Su. See ECF No. 10, pgs. 7-14.

    1.    Dr. Odipo

As to opinions rendered by Dr. Odipo, the ALJ stated:

> The consultative psychological examiner (Charles Odipo, Ed.D) assessed mild to moderate limitations in mental functioning which he additionally described as follows: able to perform one- or two-step simple repetitive tasks but not complex tasks without accommodations (moderate limitations); not able to accept instructions from supervisors and interact with coworkers and the public without accommodations (moderate limitations); able to maintain regular attendance in the workplace but may

> benefit from accommodations (mild limitations); and not able to handle normal work-related stress from a competitive work environment without accommodations (moderate limitations) (3F/4). Dr. Odipo supported his conclusions by referencing the chronicity of the claimant's symptoms and his own exam findings. He did, however, acknowledge that, with treatment (which the claimant was not receiving at the time), her prognosis was good (3F/4). The "mild" to "moderate" limitations assessed by Dr. Odipo are consistent with the preponderance of the evidence of record, including the claimant's lack of engagement with consistent mental health treatment, despite Dr. Odipo's recommendations (5F-7F). For this reason, I find Dr. Odipo's assessment overall persuasive. Importantly, I did not take Dr. Odipo's assessment (particularly, the indication of only mild to moderate, and not marked or extreme, functional limitations) to be work-preclusive as the claimant's representative argued at the hearing (Hearing transcript).

CAR 24.

Plaintiff contends that, despite finding that Dr. Odipo's opinion was persuasive, the ALJ erred because she "materially departed from the limitations set forth in Dr. Odipo's report. . . ." ECF No. 10, pgs. 9-10. According to Plaintiff:

> More specifically, the ALJ formulated a residual functional capacity (RFC) limiting Plaintiff to no public contact and no teamwork related tasks; however, the ALJ did not otherwise restrict Plaintiff from interacting with coworkers or accepting instructions from supervisors (Tr. 20-21). By contrast, Dr. Odipo opined that Plaintiff would not be able to accept instructions from supervisors and interact with coworkers and the public without accommodation due to stress and anxiety symptoms and difficulty being around people (Tr. 1397). The ALJ clearly departed from Dr. Odipo's opinion because she did not include restrictions in the RFC accounting for Plaintiff's inability to accept instructions from supervisors and interact with coworkers without accommodation (Tr. 1397).
> Additionally, Dr. Odipo opined that Plaintiff was not able to handle normal work-related stress in a competitive work environment without accommodations (Tr. 1397). Yet, the ALJ did not include any restrictions in Plaintiff's RFC accommodating her need for a low-stress environment (Tr. 20-21).
> Lastly, Dr. Odipo limited Plaintiff to work involving one or two step simple repetitive tasks (Tr. 1397). By contrast, the ALJ found that Plaintiff could perform jobs involving simple and routine tasks (Tr. 20). The distinction between "simple and routine tasks" and "one to two step simple repetitive tasks" was not immaterial. In *Rounds v. Comm'r of Soc. Sec.*, the Ninth Circuit found that an individual restricted to 1 to 2 step tasks could *not* perform occupations requiring a *Dictionary of Occupational Titles* (DOT) reasoning level of 2. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1003 (9th Cir. 2015) ("There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.""). Meanwhile, the Ninth Circuit has found that an individual that could perform at least simple, repetitive

tasks would be able to perform occupations requiring a DOT reasoning level of 2. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015).

ECF No. 10, pgs. 9-10.

Plaintiff takes issue with the ALJ's findings regarding: (1) public contact and teamwork; (2) work-related stress; (3) tasks she can perform. As to each, Plaintiff contends the ALJ materially departed from Dr. Odipo's conclusions without providing adequate reasons for doing so.

          i.      <u>Public Contact and Teamwork</u>

In response to Plaintiff's argument on this issue, Defendant asserts:

> Still, Plaintiff argues that the ALJ did not adequately account for Dr. Odipo's findings that Plaintiff could not accept instructions from supervisors or interact with coworkers without accommodations (Pl.'s Br. at p. 8). However, the ALJ specifically made accommodations to Plaintiff's interactions with both supervisors and coworkers by limiting the complexity, substance, and scope of such contact (AR 20–21). As to receiving instructions from supervisors, the ALJ limited Plaintiff to receiving instructions for only simple and routine tasks (AR 20). As to interacting with coworkers, the ALJ precluded Plaintiff from teamwork-related tasks and/or contact with the public (AR 20–21). In this way, the ALJ narrowly tailored Plaintiff's RFC to account for both her limitations as well as her residual capabilities. . . .

ECF No. 13, pg. 6.

The Court rejects Plaintiff's argument as to public contact because the ALJ specifically found that Plaintiff could have no public contact. Thus, consistent with the ALJ's finding that Dr. Odipo's opinions were "overall persuasive," the ALJ accepted this portion of the doctor's opinion and incorporated it into the statement of Plaintiff's residual functional capacity.

The Court also rejects Plaintiff's argument related to teamwork for the same reason. Here, Dr. Odipo opined that has moderate limitation in this area and could not work with co-workers "without accommodation." The ALJ provided such accommodation in the statement of Plaintiff's residual functional capacity by concluding that Plaintiff cannot perform teamwork tasks. In essence, the ALJ adopted the doctors finding and said that Plaintiff must work alone.

///

///

ii. <u>Work-Related Stress</u>

Regarding Plaintiff's ability to handle work-related stress, Defendant argues:

> Plaintiff's argument that the ALJ did not adequately account for Dr. Odipo's finding that Plaintiff was not able to handle normal work-related stress from a competitive work environment without accommodation similarly fails (AR 24, 1397) (Pl.'s Br. at pp. 8–9). Plaintiff appears to overlook that her RFC provided that she could adapt only to changes consistent with simple routine tasks (AR 21) (Pl.'s Br. at p. 5) (omitting this provision in summary of ALJ's RFC finding). In this way, Plaintiff would not have to handle the full-range of work-related stressors, as the tasks she would be responsible were limited to simple and routine ones (AR 20). See Keller, 2014 WL 130493 at *3 (limitation to simple tasks accommodated need for low-stress setting). The ALJ properly accommodated any stress-related limitations.

ECF No. 13, pgs. 6-7.

Defendant's argument is persuasive. As with Dr. Odipo's opinions regarding public contact and teamwork, the ALJ accepted Dr. Odipo's opinions regarding work-related stress, concluding that Plaintiff can adapt to changes consistent with simple, routine tasks. The limitation to simple, routine tasks accommodates Dr. Odipo's opinion that Plaintiff cannot handle work-related stress without accommodation. Here, the ALJ provided such accommodation consistent with the doctor's finding of only moderate limitation in this area. Again, the Court notes that the ALJ found Dr. Odipo's opinions "overall persuasive," including the opinion related to work stress, which the ALJ accepted.

iii. <u>Tasks Plaintiff Can Perform</u>

As to the ALJ's analysis of Dr. Odipo's opinions regarding tasks Plaintiff can perform, Defendant states:

> The only portion of the ALJ's RFC finding that arguably conflicted with Dr. Odipo's opinion concerns the claimant's cognitive capabilities, specifically, Dr. Odipo's limitation to one-to-two-step tasks (AR 24, 1397). As Plaintiff explains, the Ninth Circuit has held that this limitation is more restrictive than a limitation to simple, repetitive tasks (Pl.'s Br. at p. 9, citing Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1003 (9th Cir. 2015)). However, the ALJ's did not accept Dr. Odipo's opinion in its entirety—whereas he found Dr. Warren and Dr. Hawkins' assessments to be persuasive, he found that Dr. Odipo's opinion was "overall persuasive," indicating that there were some findings he did not agree with (AR 24). The ALJ also identified substantial evidence supporting his adoption of Dr. Warren and Dr. Hawkins' findings that Plaintiff could perform simple, routine tasks (AR 19–25).

> Indeed, aside from some mood and speech-related findings, the clinical findings were unremarkable and did not establish compromised cognitive functioning, let alone compromised functioning that would preclude Plaintiff from performing the simple, routine work set forth in her RFC (AR 19, 23). To the contrary, Plaintiff's mental-status examinations revealed intact functioning in key areas; among other substantial evidence, her memory, fund of knowledge, thought processes, concentration, attention, insight, and judgment were all normal (AR 19–20, 22, see, e.g., 1310, 1666, 1752, 1906, 1936, 1990, 2207, 2461, 2521, 2558). Plaintiff's demonstrated capabilities were also consistent with her RFC for simple, routine tasks (AR 20, 22, see, e.g., 39, 246–49, 1905). She engaged in a range of activities of daily living entailing significant cognitive capabilities including, but not limited to, taking online classes, helping her 12-year-old son with homework, managing her family's finances, and navigating public transportation (AR 19–20, see, e.g., 39, 212, 246–49). The ALJ was well within the bounds of reason in concluding that Plaintiff's normal cognitive findings and demonstrated capabilities were consistent with her restrictive RFC for work entailing just simple, routine tasks. Plaintiff, who does not address the substantial evidence underlying the ALJ's decision, fails to establish any basis for reversal and/or remand.

ECF No. 13, pgs. 7-8.

Here, Dr. Odipo limited Plaintiff to one- to two-step tasks. The ALJ rejected this opinion and concluded Plaintiff could perform simple, routine tasks. The Court finds that, in doing so, the ALJ provide sufficient reasons. First, the ALJ relied on the opinions from Drs. Warren and Hawkins who both opined that could perform simple, routine tasks. Plaintiff does not challenge the ALJ's reliance on these doctors' opinions, nor does she discuss them in her brief. Second, as the ALJ noted, Dr. Odipo's opinion regarding one- to two-step tasks is inconsistent with the objective evidence which shows unremarkable findings and a capacity consistent with simple, routine tasks. The Court finds no error with respect to the ALJ's evaluation of Dr. Odipo's opinions relating to the complexity of the work Plaintiff can perform.

       2.    <u>Dr. Su</u>

As to Dr. Su, the ALJ stated:

> The record also contains a statement from the claimant's treating psychiatrist (Frederick Su, no initial included), dated April 2021. In this statement, Dr. Su noted marked limitations in concentration, persistence, and pace and in handling workplace stress/adaptation. He additionally assessed moderate limitations in understanding, remembering, and carrying out both simple and complex tasks and mild to moderate limitations in interacting with the public and coworkers (8F). Dr. Su, however, did not support his conclusions with any evidence (other than to

11

indicate that the claimant was currently receiving treatment). In addition, his marked limitations are inconsistent with the claimant's treatment, including the lack of any recommendations from Dr. Su for higher levels of care, such as inpatient stabilization or inpatient outpatient programs for better symptoms control (5F/526-31). There are also few treatment notes from Dr. Su in the file, which suggests that he might not have seen the claimant very often during the period under consideration in this decision. For all these reasons, I find Dr. Su's assessment poorly supported and inconsistent with the preponderance of the evidence of record.

CAR 24.

With respect to Dr. Su, Plaintiff argues as follows:

> Here, the ALJ failed to provide valid reasons supported by substantial evidence for discounting Dr. Su's opinion (Tr. 24). First, the ALJ found that Dr. Su did not provide any evidence to support his conclusions (Tr. 24). The ALJ was mistaken, Dr. Su noted that Plaintiff had PTSD and dealing with the public and interacting with coworkers could trigger her symptoms and worsen her anxiety (Tr. 3188). Additionally, Plaintiff previously reported to Dr. Su that she had symptoms of depression and anxiety, including panic attacks, as well as a history of childhood abandonment and sexual trauma (Tr. 1933-1934). Thus, Dr. Su had an adequate foundation for assessing mild to moderate, as well as marked, mental limitations (Tr. 3188).
> Second, the ALJ discounted Dr. Su's opinion because Dr. Su did not refer Plaintiff for a higher level of care, such as an inpatient hospitalization (Tr. 24). However, the Ninth Circuit has held that "[h]ospitalization is not required to show that mental health conditions such as PTSD, OCD, and anxiety are disabling from employment." *Schiaffino v. Saul*, 799 Fed. Appx. 473, 476 (9th Cir. Jan. 9, 2020). Plaintiff was taking psychotropic medications and attending therapy. This course of treatment was consistent with her allegations of mental dysfunction.
> Third, the ALJ found that there were few treatment notes from Dr. Su in the file, suggesting that he might not have seen Plaintiff very often during the adjudicated period (Tr. 24). However, even if Dr. Su based his opinion on a one-time evaluation, this would not be a valid reason for discounting his opinion. Examining medical source opinions, by their very nature are often based on a one-time examination of a claimant, yet the Commissioner nevertheless has historically assigned greater weight to such opinions over non-examining doctors' opinions. *See* 20 C.F.R. § 404.1527(c)(1) (pertaining to the evaluation of medical opinions for claims filed before March 27, 2017); *Hartje v. Astrue*, Case No. 09-5486, 2010 WL 3220615, *13 (W.D. Wash. Aug. 13, 2010) ("the fact that a medical source has based his or her opinion on a one-time examination is not a valid basis for rejecting that opinion, given that the opinions of examining medical sources in general tend to be based on only one examination, and that the Commissioner himself often has based his determinations of non-disability on such one-time examinations.").

ECF No. 10, pgs. 12-13.

///

Dr. Su's one-page report, dated April 16, 2021, is contained in the record at Exhibit 8F. See CAR 3188. Dr. Su opined that Plaintiff has "marked" limitation – defined as considerable impact throughout the workday – in ability to maintain concentration and attention, and ability to withstand work stress. See id. Dr. Su opined Plaintiff has "moderate" limitation – defined as causing some work limitations impacting at least 10% to 15% of the workday – in ability to understand, remember, and carry our simple one- or two-step tasks, and ability to understand, remember, and carry out an extensive variety of technical and/or complex tasks. See id. Dr. Su opined Plaintiff has "mild to moderate" limitation – with "mild" defined as a slight limitation not causing any significant work disability – in ability to deal with the public and ability to interact with co-workers. See id. For these areas, Dr. Su noted PTSD and anxiety. See id. The doctor did not note any signs or symptoms supporting the findings of marked or moderate limitation. See id. As to Plaintiff's ability to receive and carry out instructions from supervisors and the likely number of days Plaintiff would miss work per month due to mental issues, Dr. Su noted: "out of scope of practice." Id.

Dr. Su's treatment notes are contained in the record at pages 526 through 531 of Exhibit 5F. See CAR 1933-38. These notes relate to a single 45-minute visit with Dr. Su on February 4, 2020. See id. Dr. Su diagnosed Plaintiff with PTSD and major depressive order, single episode, moderate. See id. at 1933. Plaintiff's chief complaint was depression and anxiety. See id. For a review of symptoms, Dr. Su noted that Plaintiff denied mood cycling, elevated mood, grandiosity, pressured speech, racing thoughts, or decreased need for sleep. See id. at 1934. Dr. Su also noted there is "no evidence of thought disorder, delusions, or hallucinations." Id. On mental status examination, Dr. Su found Plaintiff's behavior normal, appearance well-groomed and healthy, speech normal, mood congruent and appropriate, thought content and process logical, orientation alert to person, time, and place, attention normal, concentration normal, fund of knowledge normal, impulse control good, insight good, and judgment good. See id. at 1936. Memory was not formally tested. See id. Dr. Su prescribed Zoloft and referred Plaintiff for individual therapy. See id. at 1938.

///

The Court finds the ALJ's analysis of Dr. Su's opinions to be consistent with the revised regulations. Specifically, Dr. Su's opinions fail the "supportability" factor. As the ALJ noted, Dr. Su's April 16, 2021, assessment is not supported by citation to any clinical findings or diagnoses with respect to the marked or moderate limitations assessed. Additionally, as to Plaintiff's ability to receive and carry out instructions from supervisors and the likely number of days Plaintiff would miss work per month due to mental issues, Dr. Sue offered no opinion, stating those areas are out of the doctors practice specialty. This latter statement is odd given that Dr. Su is a mental health specialist. Finally, as the ALJ also noted, Dr. Su's treatment notes are sparse, consisting of only a single visit. And, in any event, at this single visit, Dr. Su observed normal findings in all areas assessed.

### B.     Evaluation of Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

///
///
///
///
///
///

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /
/ / /
/ / /
/ / /
/ / /

In determining Plaintiff's residual functional capacity at Step 4, the ALJ also considered Plaintiff's own statements and testimony. See CAR 21-23. The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant has alleged disability due to blindness on the right side, depression, post-traumatic stress disorder (PTSD), and a learning disorder (2E/2; Hearing transcript). At the hearing, she testified that her depression can be debilitating and that she stays in bed a lot. She has more bad than good days in a month. Her 14-year-old son does all the household chores. However, the claimant helps him set out his medications and his clothes. She is also able to attend to her basic self-care needs independently. In addition to depression, the claimant struggles with high anxiety as well. She has attacks daily, where her heart races, her hands go numb, her body shakes, and she loses concentration. To deal with these attacks, the claimant needs to lie down and sleep. She also avoids social activities and going out, other than for appointments. She takes prescribed medication, which makes her tired and nauseated (Hearing transcript).
>
> As for daily activities, the claimant relies heavily on her 14-year-old son to do the housework. When she tries to help, due to her lack of focus, tasks take twice as long to complete than usual. The claimant has a driver's license but has not driven in about three years because she fears being in an accident. At the time of the hearing, the claimant was enrolled in an online program to get her high school diploma. She had been attending for three to four months at that time. The claimant explained that she does school work for two hours total during the day, usually in 10- to 15-minute intervals. Similarly, with reading for pleasure, she loses focus quickly and "drifts off" (Hearing transcript). . . .
>
> CAR 21.

In assessing Plaintiff's statements and testimony, the ALJ first turned to the objective medical evidence of record. See id. at 22-23. The ALJ stated:

> Turning to the medical evidence, the objective findings in this case do not provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those assessed above. The record shows that the claimant sought mental health treatment from Kaiser for anxiety and depression in October 2019, the filing date of the present application (5F/86). At that time, she also expressed interest in getting tested for "adult learning disability;" however, this was not a covered benefit under her health insurance plan (5F/109, 125). The claimant's initial psychiatric evaluation with Kaiser was performed over the telephone in December 2019. At that time, she complained of daily depression with flashbacks to a traumatic childhood (being taken from her family at age 6 and placed in foster care, where she was sexually abused). She was also the single parent of a child with developmental disability/ autism. The claimant was tearful during the evaluation (5F/258). She was otherwise pleasant and cooperative, with logical thought process, normal attention and concentration, and normal fund of knowledge (5F/259). She

accepted a referral to individual therapy, but not group therapy, and agreed to see her primary care provider for medication management (5F/260).

The same month, December 2019, the claimant also underwent a consultative psychological examination at the request of the Social Security Administration. She was not on any psychotropic medications yet at that time. She again complained of continuously reexperiencing her past trauma and ruminating on how things might have turned out differently had she stayed with her biological family. She also reported a history of special education in school. On exam, the claimant was cooperative, with fair eye contact. She was lethargic and looked sad and cried when discussing her history of sexual abuse. She denied suicidal ideation. To the examiner, the claimant appeared to be of below average intelligence. However, she was able to recall three out of three objects after a delay. The claimant also displayed mildly impaired attention, repeating four out of six digits forward and three out of six in reverse. She had difficulty spelling backwards but could spell forward. Finally, she was able to complete a three-step command. The claimant was diagnosed with Post-Traumatic Stress Disorder (PTSD) and Bipolar Disorder I, and the examiner assessed mild to moderate functional limitations, as discussed in more detail below (3F).

In January 2020, the claimant had her first therapy appointment and appeared tearful and sad with depressed mood. However, she reported being under a lot of relationship/situational stress at that time, including breaking up with her boyfriend and having difficulty connecting to mental health services. The rest of her mental status exam showed good grooming, a pleasant and cooperative manner, logical thoughts, intact memory, and normal attention/concentration. The claimant's speech was soft and pressured (5F/344- 45, 426). In February 2020, the claimant reported that she was seeing some else now, who had been "very supportive" of her over the past month. She was, however, still struggling with depression and lack of motivation. On exam, she was well-groomed, pleasant and cooperative, with pressured speech, euthymic and sad mood, normal thought content, and good insight and judgment (5F/498-99).

Later the same month, the claimant saw a psychiatrist (Dr. Su), who initiated Zoloft. Dr. Su's exam notes indicate that the claimant appeared healthy and well-groomed. She was pleasant, cooperative, and "well-related." She appeared anxious, with congruent affect. Thought processes were logical, coherent, and goal-directed (5F/526-31). The claimant was subsequently switched to Lexapro due to side effects from Zoloft (5F/575, 578, 614, 623). In addition, despite the voluminous record, there are no more documented visits with Dr. Su after February 2020. Instead, the claimant had medication management appointments with a Kaiser pharmacist who worked closely with Dr. Su (5F/575, 578, 614, 623; 6F/358). In April 2020, the claimant reported that she had been tolerating Lexapro well for the past two weeks. The pharmacist offered to increase the dose, but she declined. She agreed, however, to the addition of hydroxyzine for "more acute relief of anxiety" (6F/358).

There is a break in treatment records after that until September 2020, when the claimant was scheduled to start online classes on depression management (7F/294). However, she failed to attend and explained, in an e-mail, that she had "a lot going on" with her brother's passing in

> August 2020 (7F/303). There are again no treatment records – whether from therapy, Dr. Su, or the medication management pharmacist – until March 2021, when the claimant was again referred to a Depression Care Clinic (an eight-week individual therapy course that focuses on skills to address depression) (7F/548). It is unclear from the record whether the claimant attended the therapy sessions or not.
>
> As for the claimant's physical impairments, she was diagnosed with astigmatism, myopia, and amblyopia in her right eye after an eye exam in October 2019 (2F/5). Her consultative medical examination in January 2020 also revealed legal blindness in the right eye, with 20/25 vision in the left eye. The claimant was able to move about the examiner's office without any help (4F). In March 2020, she was diagnosed with asthma over the phone and prescribed an inhaler (7F/14). There is, however, no evidence of further evaluation for a respiratory condition.

CAR 22-23.

The ALJ determined that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms are not fully supported by the preponderance of the evidence of record." CAR 23. The ALJ stated:

> . . . More specifically, the claimant is legally blind in the right eye, but this is a long-standing impairment, for which she receives no specialized care. She was also able to work with it (run her own snack cart) in the past. With respect to the mental impairments, the claimant's limited treatment does not support her allegations of disabling symptoms. She saw a therapist in early 2020, but therapy notes cease after early 2020. Similarly, there are no documented follow-up visits with the claimant's psychiatrist, Dr. Su, after the initial evaluation in February 2020 (when Zoloft was initiated). Instead, the claimant saw a Kaiser pharmacist for medication management (and had her medication switched from Zoloft to Lexapro due to side effects), but even those visits appear to stop around April 2020. After that, the claimant was scheduled to participate in online depression management courses in September 2020 and March 2021, but there is no evidence that she did. Finally, mental status exam notes are fairly unremarkable, documenting anxiety and some tearfulness when recounting childhood trauma but no other significant cognitive, perceptual, or behavioral abnormalities. There is also no evidence that the claimant was ever considered a candidate for inpatient stabilization or for an intensive partial hospitalization program to learn better coping skills. For all these reasons, I find that the residual functional capacity assessment above sufficiently accommodates the claimant's subjective complaints, and any additional functional limitations are not supported by the record at this time.

Id.

///

///

///

Plaintiff argues the ALJ "failed to provide clear and convincing reasons for discounting Plaintiff's mental symptoms." ECF No. 10, pgs. 15-16. The Court disagrees. As discussed above, Dr. Odipo's opinions were largely accepted, and Dr. Su's opinions were unsupported by the doctor's own observations of normal findings on mental status examination. Further, as also discussed above, Plaintiff raises no challenge with respect to the ALJ's reliance on the opinions of Drs. Warren and Harkins, who both found that Plaintiff's mental symptoms are not disabling.

### IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 10, is denied;
2. Defendant's motion for summary judgment, ECF No. 13, is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  August 7, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE